UNITED STATES DISTRICT COURT                        b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

EARL B. YOUNG,                        CIVIL ACTION
        Plaintiff                     SECTION "P"
                                      NO. 1:12-cv-02154
VERSUS

NATHAN CAIN, et al.,                  JUDGE JAMES T. TRIMBLE, JR.
        Defendants                    MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed by pro se plaintiff Earl B. Young, in forma pauperis, pursuant to 42 U.S.C. § 1983, on August 13, 2012 (Doc. 1) and amended on October 11, 2012 (Doc. 5). The two remaining defendants are Charles McVea ("McVea") (a physician previously employed as the medical director at the Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana) and Robert Lyle Cleveland ("Cleveland") (a physician currently employed at ACC) (Doc. 25). Young contends that, while he was incarcerated in the Avoyelles Correctional Center ("ACC") in 2012, he was denied medical care (Doc. 5). For relief, Young asks for monetary damages, punitive damages, appropriate medical care, and a transfer to another facility (Docs. 1, 5). Young is presently incarcerated in ACC.

Young contends that, on September 29, 2011, because he had previously had prostate cancer, he saw a doctor at the LSU-Shreveport urology clinic and was prescribed double portions in his meals, a nutritionally suitable diet, "Boost" dietary supplement

twice daily, and medication three times daily (Doc. 5).   Young contends that, when he returned to ACC, the doctor and an RN told him he did not need the Boost dietary supplement (Doc. 5).   Young states that he weighed 130 pounds in September 2011, but that his normal healthy weight is 160 pounds (Doc. 5).   Young further states that Boost was finally ordered for him at ACC on September 28, 2012, to end on September 28, 2013, but was cancelled early because Young was accused of having stolen six bottles of Boost in August 2012 (Doc. 5).   Young contends his weight dropped to 119 pounds by October 2012 (Doc. 5).    Young also contends that, instead of providing him Boost, the ACC physician ordered that he be given "double portions" at meals through September 28, 2013 (Doc. 5). Young contends the ACC food service staff interpreted "double portions" to mean an extra piece of bread, and that even the extra bread was discontinued in February 2013 (Doc.5).

Defendants answered the complaint and requested a jury (Doc. 24).   Defendants also filed a motion for summary judgment with affidavits, documentary evidence and a statement of undisputed facts (Docs. 45, 46, 51).   Young responded to defendants' motion (Doc. 56).   Defendants' motion for summary judgment is now before the court for disposition.

Law and Analysis

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that

the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999),

and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.   In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Exhaustion

Defendants argue in their motion for summary judgment that Young failed to properly exhaust his administrative remedies. Specifically, defendants contend that Young failed name Dr. McVea and Dr. Cleveland in his grievances.

Since exhaustion is an affirmative defense, the burden is on the defendants to demonstrate that Young failed to exhaust available administrative remedies.  Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910 (2007).   Defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.  Dillon, 596 F.3d at 266, citing Martin v. Alamo Cmty. Coll. Dist., 353 F.3d

4

409, 412 (5th Cir. 2003).

Defendants argue that Young did not name Dr. McVea and Dr. Cleveland in his grievances, so his claims against them are not exhausted. However, exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance that was filed. The lower court must determine the sufficiency of the exhaustion in such cases. Jones v. Bock, 549 U.S. 199, 219, 127 S.Ct. 910, 923 (2007).

Under Louisiana law, a grievance is defined as "a written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an offender of an institution or an incident occurring within an institution." 22 La. A.D.C. Pt. 1, § 325(E). In his first step grievance (dated June 25, 2012), Young complained that, when he returned to ACC from LSU-S in June 2012, a nurse at ACC denied him the Boost dietary supplement and double portion meals prescribed by the physician at LSU-S (Doc. 45, Ex. p. 2/10). The prison staff responded that the prison physician had discontinued the Boost, and noted that the prison physician was not obligated to follow the recommendation of a private physician (Doc. 45, Ex. p. 3/10). The second step response stated that the ACC physician was Young's primary care doctor who determined his treatment plan; therefore, the medical staff did not have to follow the recommendations of an outside physician.

In dealing with defendants' exhaustion defense, the court is only concerned with the adequacy of Young's grievance to apprise the prison officials at ACC with the reasons why Young believed the medical care provided him at ACC was inadequate. Since Young's grievance sets forth the facts that the treatment plan recommended by the LSU-S physician was not followed by the ACC medical staff, Young did not need to list all possible persons who could be named as defendants in a future lawsuit. The purpose of a grievance is to enable an offender to seek formal review of a complaint relating to aspects of his incarceration, 22 La. A.D.C. Pt. 1, § 325(C), not to put specific prison officials on notice that they may be sued in the future. <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004). The grievance is not a summons and complaint that initiates adversarial litigation. <u>Johnson</u>, 385 F.3d at 522.

Since Young's grievances were adequate to apprise the prison officials of his medical care complaints, Young's claims of denial of medical care against Dr. McVea and Dr. Cleveland are exhausted.

Therefore, defendants' motion for summary judgment should be denied on the issue of exhaustion.

<u>Deliberate Indifference</u>

Next, defendants contend that Young has not shown that he suffered any adverse health consequences due to being denied Boost and double portion meals.

First, it is noted that defendants' claim that Young's Boost

was discontinued as a form of punishment is a deliberately indifferent denial of medical care. Young was prescribed Boost by the ACC physician (as well as the private physician) because he was losing weight. Deliberately taking away medical care is not a normal or acceptable form of punishment for a prison rule infraction. Moreover, it appears that defendants ignored Young's complaints that the food service staff was not following the order to give Young double portion meals.

Defendants argue that Young has not shown that he suffered adverse health consequences as a result of not having the double portion meals or the Boost.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).

The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer, 511 U.S. 825, 114 S.Ct. at 1980. Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. Estelle, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical need. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

1.

In their statement of undisputed facts, defendants show that

8

Young weighed 144 pounds in July 2011 (Doc. 45, Ex. p. 3/39), that Dr. McVea was the medical director at ACC in 2011, and that Dr. Cleveland became the medical director at ACC on February 14, 2012 (Doc. 45).

Young's medical records from the LSU-Shreveport Medical Center show that he has a medical history of a prostatectomy in 2009 due to prostate cancer and that, in August 2011, Young was 5' 11" tall and weighed 145 pounds (Doc. 45, Ex. pp. 17-23).  In September 2011, at LSU-S, Young complained that he used to weigh 65 pounds more and his weight had been going up and down four to five pounds every month, so he was prescribed Boost dietary supplement twice a day for a year (Doc. 45, p. 12/25).  However, Dr. McVea cancelled the Boost prescription (Doc. 45, Ex. p. 4/39).

Young's medical records from ACC show that, on July 21, 2011, Young weighed 144.4 pounds.  On July 25, 2012, Young weighed 140 pounds and complained of a twenty pound weight loss, so Dr. Cleveland prescribed Boost twice daily for six months (Doc. 45, Ex. pp. 3, 13-14, 17/39).  However, Young's Boost was cancelled on August 15, 2012 because Young had been written up on August 14, 2012 (Doc. 45, Ex. pp. 15, 18-19/39).  Defendants show in their statement of undisputed facts that, on August 15, 2012, Young's Boost was discontinued because he had been written up for stealing six bottles of Boost (Doc. 45, Ex.).

In August and September 2012 at LSU-Shreveport Medical Center,

Young was 5'11" tall, weighed 145 pounds, and complained of a ten pound weight loss in the last year (Doc. 45, Ex. pp. 3, 11/25).

On September 29, 2012, Young weighed 139 pounds at ACC (Doc. 45, Ex. p. 23/39), and was prescribed a "double portion diet" for one year by Dr. Cleveland (Doc. 45, Ex. p. 24/39). On September 30, 2012, Young asked to see the doctor, stating that he needed "double portions" of the meat and claiming he was still not being given Boost (Doc. 45, Ex. p. 26/39). The doctor saw Young in November 2012 and noted that Young weighed 144 pounds (Doc. 45, Ex. p. 28/39). In April 2013, Young was transferred to the Allen Correctional Center in Kinder, Louisiana; he weighed 143 pounds (Doc. 45, Ex. pp. 29-30/39). Young weighed 139 pounds in May 2013 and 144 pounds in June 2013, and he asked to see the doctor (at Allen Correctional Center) concerning not receiving Boost (Doc. 45, Ex. pp.32-33/39). Young's hypercaloric diet expired in May 2013 and was continued for three more months (Doc. 45, Ex. p. 31/39), then was again continued for six more months in July 2013 (Doc. 45, Ex. p. 32/39). In July 2013, Young weighed 139 pounds (Doc. 45, pp. 36-39/39).

2.

First, Young contends Dr. McVea was deliberately indifferent to his right to medical care when he refused to follow the

urologist's[1] recommendation that he be given Boost; the urologist noted Young's complaint that his weight had been variable and that he was unable to tolerate the "greasy prison food" (Doc. 45, Ex. p. 7/39).  However, as defendants argue, the prison doctors do not have to follow the recommendations of private physicians, and the urologist's notes do not indicate a serious medical condition that was to be treated with Boost.  Therefore Young has not shown that he had a serious medical need that made it necessary for him to take Boost in July 2011, and has not shown that Dr. McVea was deliberately indifferent to his serious medical needs when he cancelled Young's Boost.

There are no genuine issues of material fact which would preclude a summary judgment in favor of Dr. McVea.

3.

In 2012, Dr. Cleveland prescribed Boost for Young's weight loss, then cancelled it to punish Young for having stolen some Boost.  Cancellation of prescribed medical treatment as a form of inmate punishment is a denial of medical care that indicates deliberate indifference to serious medical needs.  Discontinuation of prescribed medical treatment as punishment shows the defendant was aware the medical care was necessary as prescribed and

---

[1] Dr. Donald A. Elmajian is the urologist at the LSU Health Sciences Center in Shreveport, Louisiana who examined Young in 2011 and 2012 (Doc. 45, Ex. pp. 1-25/25).  See the American Medical Association's DoctorFinder at https://apps.ama-assn.org/doctorfinder/html/patient.jsp.

Case 1:12-cv-02154-JTT-JDK   Document 57   Filed 06/02/15   Page 12 of 13 PageID #:  447

intentionally withheld it.

However, Young has not shown he had a serious medical need for Boost when Dr. Cleveland cancelled it in September 2012. Young started receiving "double portions" of food soon after the Boost was discontinued. The ACC records show Young gained five pounds between September 2012 and November 2012 (all as measured at ACC), rather than losing weight after the Boost was cancelled.[2] Since Young cannot show he had a serious medical need for Boost, there are no genuine issues of material fact which would preclude a summary judgment in favor of Dr. Cleveland.

Therefore, defendants' motion for summary judgment should be granted.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 45) be GRANTED and that Young's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[2] Young contends defendants altered his medical records to change his weight on them. However, the record of Young's weight in his medical records from the outside physician (Doc. 45, Ex.), Allen Correctional Center (Doc. 45, Ex. pp. 30-39/39, pp. 1-25/25), and ACC (Doc. 45, Ex. pp. 1-29/39) are similar enough to indicate that the ACC officials did not alter Young's medical records. There is nothing in Young's medical records from August 2011 through July 2013 to support his contention that his weight ever dropped as low as 119 pounds.

objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before making a  final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2nd day of June 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE